FILED
2009 Jul-01  PM 04:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **BROOKE G. GRAYS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 5:08-CV-1544-VEH** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner,** | ) |
| **Social Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

---

## **MEMORANDUM OPINION**

Plaintiff Brooke G. Grays[1] (hereinafter "Ms. Grays") brings this action pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), which denied her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").[2] Ms. Grays timely pursued and

---

[1] This court notes that Ms. Grays' legal name is apparently "Brooke Garth," but no issues have been raised by either party that the records provided to the ALJ or this court are not Ms. Grays's records. (Tr. 429).

[2] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits (DIB) or Supplemental Security Income (SSI). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statues or regulations found in quoted court decisions.

exhausted her administrative remedies available before the Commissioner. The case is ripe for review pursuant to 42 U.S.C. § 405(g)[3] of the Social Security Act.

## FACTUAL AND PROCEDURAL HISTORY

Ms. Grays was a 25-year-old female at the time of her first hearing before the administrative law judge (hereinafter "ALJ"). (Tr. 452). She was a 27-year-old female at the time of her second and final hearing in front of the ALJ. (Tr. 476).

Ms. Grays stopped attending high school after completion of the tenth grade and received her GED in 2004. (Tr. 476). Ms. Grays's past work experience includes employment as a retail cashier, waitress, office clerk, presser, and a night auditor at a hotel. (Tr. 467-68).

Ms. Grays claims she became disabled originally beginning on December 27, 2003, but, due to employment records that showed earnings in 2004, 2005, 2006, and testimony by her about employment in 2007, she amended her onset date to January 1, 2005. (Tr. 112, 113, 476-77). Ms. Grays asserts that she is disabled due to nervousness, panic attacks, suicidal tendencies, and an inability to concentrate. (Tr. 201).

Ms. Grays has not engaged in substantial gainful activity ("SGA") since

---

[3] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

January 1, 2005.  More specifically, the ALJ noted that while she has participated in some work activity after January 1, 2005, it was not at the level of SGA.  (Tr. 21).

Ms. Grays filed her application for a period of disability and DIB on April 27, 2004.  (Tr. 96).  She also filed an application for SSI on April 27, 2004.  (Tr. 428).  The claims were denied by notice dated July 15, 2004.  (Tr. 41, 434).

Ms. Grays filed a timely written request for a hearing on August 5, 2004.  (Tr. 46).  The first hearing was held on April 18, 2006.  (Tr. 447).  The ALJ concluded that Ms. Grays was not disabled and denied her application on March 11, 2006.  (Tr. 34-40).

On April 2, 2007, the Appeals Council granted Ms. Grays's timely request for review, requiring the ALJ to conduct another hearing and to further consider Ms. Grays's impairments.  (Tr. 75).  On December 13, 2007, the ALJ conducted the additional hearing.  (Tr. 471).

Despite the additional hearing, the ALJ again concluded that Ms. Grays was not disabled and denied her application on January 11, 2008.  (Tr. 19-26).  On July 8, 2008, the Appeals Council denied Ms. Grays's timely request for additional review, making the decision of the ALJ stand as the final decision of the Commissioner.  (Tr. 16-18).

Ms. Grays filed a Complaint on August 28, 2008, which asks this court to

3

review the ALJ's decision.  (Doc. #1).  This court has carefully considered the record and affirms the decision of the ALJ.

## STANDARD OF REVIEW

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  *Richardson v. Perales,* 402 U.S. 389, 390 (1971); *McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Bloodsworth*, 703 F.2d at 1239.  This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id*.  Substantial evidence is "more than a scintilla, but less than a preponderance."  *Id.*

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the

4

Regulations promulgated thereunder.[4]  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a).  To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;
(2)     whether the claimant has a severe impairment;
(3)     whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4)     whether the claimant can perform her past work; and
(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R.

---

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through June 12, 2009.

section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job."  *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show that such work exists in the national economy in significant numbers.  *Foote*, 67 F.3d at 1559.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Ms. Grays had not engaged in SGA since January 1, 2005, her alleged onset date. (Tr. 19).  He also found that Ms. Grays met the insured status requirements for the Social Security Act through the date of his decision.  (Tr. 21). The ALJ also determined that Ms. Grays had the following impairment of a depressive disorder, which constitutes a "severe" impairment when considered within the meaning of 20 C.F.R. § 404.1520(c) and 416.920(c).  (Tr. 21).  The ALJ further decided that Ms. Grays's mental impairment does not medically meet or equal, both individually and in combination, one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Regulations.  (Tr. 22).

6

The ALJ next concluded that Ms. Grays retains the residual functional capacity to perform a full range of work at all exertional levels. (Tr. 22). Also, the ALJ stated that, mentally, Ms. Grays would "have moderate or less limitations in her ability to perform the basic mental requirements of work-related activities." (Tr. 22). The limitations would prevent Ms. Grays from performing "semiskilled or higher work activities but would allow her to perform simple routine, repetitive work tasks." (Tr. 22). These tasks would only require Ms. Grays to have "occasional contact with the public, supervisors and co-workers." (Tr. 22). The ALJ also determined that Ms. Grays is able to perform "past relevant work as a presser" because such a job "does not require performance of work-related activities precluded by the claimant's residual functional capacity." (Tr. 25).

The vocational expert ("VE") testified that Ms. Grays's work experience as a cashier is characterized by the Dictionary of Occupational Titles[5] as "light"[6] and "unskilled."[7] (Tr. 500). Further, Ms. Grays's position as a waitress, office clerk, and

---

[5] The Dictionary of Occupational Titles provides different examples of work activities that fall within the residual functioning capacity for medium work. (Washington, D.C.: U.S. Dept. of Labor, Employment and Training Administration: U.S. G.P.O., 1993). Available online at: http://www.occupationalinfo.org.

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b).

[7] "Unskilled work is work which needs little or no judgement to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a).

7

presser are characterized as "light" and "semi-skilled."[8]  (Tr. 500).  In addition, Ms. Grays's job as a night auditor at a hotel is characterized as "sedentary"[9] and "skilled."[10]  (Tr. 500).  The ALJ then posed the first hypothetical, in which he asked the VE questions to determine if  someone of Ms. Grays's age, education, past relevant work history, with no physical limitations or restrictions, but including psychological or psychiatric impairments that would cause her to be limited to simple routine work activities, would be able to perform any of her previous occupations. (Tr. 501).  The VE stated that the only occupation previously performed by Ms. Grays that would fit within these limitations was her job as a presser.  (Tr. 501).

Next, the ALJ posed a second hypothetical in which he asked the VE to consider if the claimant had psychological or psychiatric impairments that would affect her ability to persist in concentration and pace, would she be unable to perform unskilled work for up to two hours, including her previous job as a presser and further "the wide world of unskilled work." (Tr. 501).  The VE explained to the ALJ that

---

[8] "Semi-skilled work is work which needs some skills but does not require doing more complex work duties."  20 C.F.R. § 416.968(b).

[9] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools."  20 C.F.R. § 416.967(a).

[10] "Skilled work requires qualifications in which a person uses judgement to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced."  20 C.F.R. § 416.968(c).

under such limitations, all jobs, including even unskilled ones, would be ruled out. (Tr. 501).

The ALJ then proceeded to ask the VE a third hypothetical, taking into consideration if the claimant had to take unscheduled work breaks because of her psychiatric or psychological impairments and if these conditions affect her ability to participate in "the wide world of unskilled work." (Tr. 502). The VE testified that such a requirement would rule out all unskilled work. (Tr. 502).

The ALJ asked a fourth and final hypothetical in which he referenced hypothetical number one above and added that the claimant would not be able to perform her previous job as a presser and inquired if there would be any alternate work available. (Tr. 502). The VE stated that there would be some unskilled jobs available in the economy where personal contact was extremely limited. (Tr. 503). Specifically, those jobs consisted of labelers, folders, and inspectors. (Tr. 503).

The ALJ concluded that Ms. Grays was not under a disability at any time through the date of the ALJ's decision and therefore was not eligible for DIB under §§ 216(i) and 223(d) of the Social Security Act. (Tr. 25). Further, based on her application for SSI, Ms. Grays was not disabled under § 1614(a)(3)(A) of the Social Security Act. (Tr. 26).

## ANALYSIS

The court can reverse a finding of the Commissioner if it is not supported by substantial evidence.  42 U.S.C. § 405(g).  "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[11]  On appeal, Ms. Grays requests this court to reverse the ALJ's finding of no disability and in the alternative to remand her case for further proceedings, including an additional hearing by a different ALJ to determine disability status. (Doc. #8 at 21).  In making this request, Ms. Grays asserts that the "findings of the Commissioner are not supported by substantial evidence and therefore the ALJ erred by not finding that the claimant met the criteria of Listing 12.04, and failed to properly consider Ms. Grays'[s] treatment, physical exertional limitations, weight of other sources of evidence; and, the ALJ erred by discrediting the medical opinion to functional capacity." (Doc. #8 at 8, 11, 15-18).  In its review, the court finds that the ALJ applied the correct legal standards to Ms. Grays's claims and that the ALJ's decision of no disability was supported by substantial evidence.

---

[11] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

## I.     The Commissioner's Findings That Ms. Grays Is Not Disabled Are Supported by Substantial Evidence.

Ms. Grays states that the "findings of the Commissioner [are] not supported by substantial evidence and that the Commissioner's conclusions of law [were] erroneous." (Doc. #8 at 8). In determining whether a claimant has met her burden of proving that she was disabled, the Commissioner is charged with the duty to weigh the evidence, resolve material conflicts in testimony, and determine the case accordingly. *See Wheeler v. Heckler,* 784 F.2d 1073, 1075 (11th Cir. 1986); *Watson v. Heckler,* 738 F. 2d 1169, 1172 (11th Cir. 1984).

### A.     The ALJ Properly Found Ms. Grays Is Not Disabled Because She Fails to Meet Listing 12.04.

Ms. Grays contends her mental condition met or medically equaled "the listings of 12.04." (Doc. #8 at 11). In order for Ms. Grays to assert that she is disabled on the basis of a mental disorder, it "requires documentation of a medically determinable impairment(s), consideration of the degree of limitation such impairment(s) may impose on your ability to work, and consideration of whether these limitations have lasted or are expected to last for a continuous period of at least 12 months." 20 C.F.R. Part 404, Subpart P, Appendix 1.

While, at times, Ms. Grays has been under some form of mental treatment since October 2003, it has been infrequent and generally not from a mental health source.

11

(Tr. 23).  In addition, medical records demonstrate that none of the physicians who has treated Ms. Grays indicated that her condition would prevent her from ever engaging in gainful employment again nor has anyone reported that her condition will last or is expected to last for a continuous period of twelve months.  (Tr. 262-63, 317).

Moreover, Dr. Love, her mental health treating physician from December 14, 2005, until September 22, 2006, stated that Ms. Grays's condition would only prevent her from engaging in SGA for a period of three to six months.  (Tr. 317).  This opinion relating to SGA by Dr. Love was rendered on March 16, 2006.  (Tr. 317).  Further, less than one month later, on April 13, 2006, when Ms. Grays requested Dr. Love to evaluate her mental condition for disability purposes,  Dr. Love declined to complete the forms relating to a Listing under either 12.04 or 12.06 for Ms. Grays. (Tr. 362).

The criteria set forth to qualify for a disability related to a mental disorder(s) is quite exacting and requires particular symptoms and limitations.  20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00.  Listing 12.04 requires either "depressive syndrome with a minimum of four additional characteristics,[12] or manic syndrome

---

[12] Additional characteristics required for affective disorders are quite lengthy and therefore have not been set out here. These characteristics can be found at: www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm#12.04%20Aff

with three additional characteristics, or bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04A.  In addition, 12.04 subsection B requires that the condition must result in  a marked degree of limitation of at least two of the following: "(1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; (4) repeated episodes of decompensation, each of extended duration."   20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04B.

Based on the requirements of Listing 12.04, Ms. Grays asserts that she meets the requirements for a mental disorder and marked limitation in all four broad functional areas listed above.  (Doc. #8 at 12-13.)  This court finds that evidence contained in the record does not fully substantiate this claim.

Instead, the record supports the finding of the ALJ that Ms. Grays's mental impairment imposes only moderate restrictions on functioning. (Tr. 22). Specifically, the record shows a collection of wage earning reports demonstrating that, throughout the period she alleges she has been disabled, Ms. Grays has been able to obtain employment for periods of short duration without being fired .  (Tr. 113-29).

---

ective%20Disorders

Ms. Grays further asserts she is so depressed she cannot function or care for herself, yet her appearance as documented by her doctors is always neatly groomed, clean and appropriately dressed.  (Tr. 257, 262, 328, 369, 373, 375).  In addition, Ms. Grays has been able to attend a school function of her daughter and pick her children up from school.  (Tr. 353, 492).  Also, the record indicates that Ms. Grays has been able to maintain some social functioning as she had a friend who stole her medication and a boyfriend prior to and for a minimum of three months after her first hearing in 2006.  (Tr. 305, 326, 365, 461).

These inconsistencies in the record more than adequately support the findings of the ALJ that the "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 23).  Accordingly, this court concludes that the ALJ properly considered Ms. Grays's condition and affirms the ALJ's finding that Ms. Grays does not meet Listing 12.04 since a totality of the evidence contained in the record confirms that her mental impairment causes only moderate restrictions on her ability to function.

B.   **Ms. Grays's Psychiatric Treatment was Properly Assessed By the ALJ in Relation to Ms. Grays's Residual Functional Capacity.**

Ms. Grays also asserts that the ALJ incorrectly stated that she was "essentially" not receiving psychiatric treatment of any sort. (Doc. #8 at 16). Further, Ms. Grays argues that "[e]ssentially not receiving treatment does not mean . . . not receiving treatment." (Doc. #8 at 16). On review of the record, there is only one medical note in the file in which Ms. Grays has mentioned or sought treatment for a mental disorder since stopping her treatment by a psychiatrist in 2006. (Tr. 402). More specifically, Ms. Grays described that she was having anxiety to a general practitioner on April 19, 2007, for which she was prescribed a thirty day supply of Xanex.[13] (Tr. 402). Other than this isolated event on April 19, 2007, Ms. Grays has not sought or participated in any psychiatric treatment since July 28, 2006. (Tr. 366).

Further, Ms. Grays was contacted by Mental Health Center of North Central Alabama, Inc., on three separate occasions concerning failure to schedule appointments and once for missing one. (Tr. 353, 354, 355). When the clinic staff was finally able to question Ms. Grays about this behavior she reportedly stated "she'd be alright" and hung up the phone on the staff. (Tr. 355).

Additionally, Ms. Grays appears to argue that the ALJ improperly used her chosen lack of treatment to find that Ms. Grays "does not have any mental problems"

---

[13]Also known as alprazolam, which is a benzodiazepine used as an anxiolytic in the treatment of anxiety and panic disorders and for short term relief of anxiety symptoms, administered orally. *Dorland's Illustrated Medical Dictionary* 1848, 50 (1994).

15

and that the "ALJ should have ruled that she was disabled for a closed period instead of only moderate limitations" on her residual functional capacity. (Doc. #8 at 16-17). In reviewing the decision of the ALJ, the record contains no statement by the ALJ that Ms. Grays "does not have any mental problems."  The only statement by the ALJ in reaching a decision about her residual functional capacity regarding her mental health relates to Ms. Grays's repeated failure to comply with treatment.  (Tr. 24).

Moreover, it is entirely appropriate for an ALJ to take into consideration any evidence of treatment, medication, or lack there of, as it may impact a claimant's residual functional capacity. *See* 20 C.F.R. §416.929(c)(2) & (3).  More specifically, the regulations expressly recognize that "[w]ith adequate treatment some individuals with chronic mental disorders not only have their symptoms and signs ameliorated, but they also return to a level of function close to the level of function they had before they developed symptoms or signs of their mental disorder."  20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00H.  Therefore, the ALJ properly considered Ms. Grays's failure to comply with treatment when determining her residual functioning capacity.

**C.**   **The ALJ Properly Found Ms. Grays Is Able to Perform a Full Range of Work at All Exertional Levels Because She Fails to Allege Any Physical Exertional Limitations.**

Ms. Grays also maintains that, due to her height and weight, it was

16

"incredulous" for the ALJ to find that she would be able to perform a full range of work at all exertional levels.  (Doc. #8 at 17).   There is, however, no evidence in the medical records of any physical exertional limitations that causes Ms. Grays to be limited or unable to work.

In assessing residual functioning capacity, "only functional limitations and restrictions that result from medically determinable impairments" are to be consider and factors specifically not permitted are claimant's "age and body habitus."  *See* Social Security Ruling 69-8p, 1996 WL 374184 (S.S.A.).  Moreover, when "there is no allegation of physical limitation or restriction . . . and no information in the case record that there is such limitation or restriction the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity." *Id.*  As in this case, Ms. Grays's failure to assert physical exertional limitations caused the ALJ to properly find that she had no limitations or restrictions as to physical residual functional capacities.

   **D.    The ALJ Did Not Discount the Findings of Ms. Grays's Treating Physician and Gave Proper Weight to All Medical Evidence in the Record.**[14]

---

[14] The court notes that the following overall framework and analysis was used in *Chapman v. Astrue,* No. 2:07-CV-01493 VEH (Doc. #10) (N.D. Ala. Apr. 30, 2008).  *Chapman* similarly resulted in an order affirming the ALJ's decision.  (Doc. #11).

17

1.     **Treating Physician**

Ms. Grays also contends that "the ALJ ignored the overwhelming medical evidence presented and almost entirely discounted the findings of [Ms. Grays's] treating physician in favor of the report of one time consultative psychologist, which was improper." (Doc. #8 at 17).  Contrary to Ms. Grays's position, the ALJ did not commit error with respect to the evaluation of the medical evidence.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998).  The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision, but the court should not attempt to reweigh the evidence.  *See Foote*, 67 F.3d at 1560.

The weight afforded to a physician's conclusions regarding a claimant depends upon the extent to which statements are supported by clinical or laboratory findings and are consistent with other evidence of record.  *See* 20 C.F.R. §§ 404.1527(d), 416.927(d)(1); *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004); *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986).  A doctor's opinion should be given controlling weight only if it is consistent "with other substantial evidence in

[Plaintiff's] case record. . . ." 20 C.F.R. § 404.1527(d)(2). "Generally, the more consistent an opinion is with the record as a whole, the more weight [that opinion shall be accorded]." 20 C.F.R. § 404.1527(d)(4).  The Regulations provide that the supportability of a physician's opinion depends on the degree to which the source presents relevant evidence to support the opinion, and the degree to which the opinion is internally consistent and consistent with other evidence.  *See* 20 C.F.R. § 416.1527(a), (b), (c)(2), and (d)(3)-(4).

The opinion of a treating physician as to the plaintiff's condition and the medical consequences thereof is entitled to deference, absent good cause.  *See* 20 C.F.R. §§ 404.1527, 416.927 (1998); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause exists where the treating physician's opinion is "not bolstered by the evidence", where the "evidence support[s] a contrary finding", or where the "opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41(11th Cir. 2004).   If there is incompatible evidence, the Supreme Court has stated that "[t]he trier of fact has the duty to resolve" the contest between "conflicting medical evidence." *Richardson v. Perales*, 402 U.S. 389, 399 (1971).

Ms. Grays's treating physician, Dr. Love, in 2006 stated that her condition would not eliminate all likelihood of her ability to ever engage in gainful

19

employment. (Tr. 317). This opinion was consistent with the opinion of the state agency psychologist, Dr. Haney, and the state reviewing physiologist, Dr. Rankart. (Tr. 262, 276). Dr. Haney also opined that Ms. Grays would not be completely eliminated from ever engaging in gainful employment. (Tr. 262). Further, Dr. Love felt Ms. Grays' condition would only last three to six months and that she would be able to return to work. (Tr. 317). On the other hand, Dr. Haney felt that Ms. Grays's condition would last from six to twelve months. (Tr. 262). As the ALJ explained in his decision, while he gave considerable weight to state agency psychologist's opinion, the "controlling weight was given to the opinion of Dr. Love." (Tr. 25).

In determining which medical opinion to give controlling weight, the ALJ properly took into consideration that Dr. Love's opinion was "based upon objective clinical and diagnostic finding and his treating relationship with the claimant over a substantial period of time." (Tr. 25). Moreover, Ms. Grays's treating physician, Dr. Love, elected not to complete the requested documentation for Listings 12.04 and 12.06 to help establish a mental disability. (Tr. 362). Therefore, since the ALJ adequately explained his reasoning for giving controlling weight to Ms. Grays's treating physician's opinion, the ALJ's assessment of Ms. Grays's disability claims is supported by substantial evidence.

## 2.   **Mental Counselors and Therapist Opinions**

Ms. Grays finally argues that the records from her counselors and therapist provide significant evidence of her mental conditions and should be afforded substantial weight. (Doc. #8 at 18-20). Acceptable medical sources include licensed physicians, licensed or certified psychologists, optometrists, podiatrists, and qualified speech-language pathologist. *See* 20 C.F.R. § 404.1513(a). Further, the regulation states that "[w]e *may* also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work." *See* 20 C.F.R. § 404.1513(d) (emphasis added). The regulations do not mandate that the ALJ give consideration to other such sources.

Therefore, since the ALJ gave controlling weight to Dr. Love's opinion and is not required by the regulations to consider other sources, substantial evidence supports his determination that Ms. Grays was not eligible for DIB or SSI.

## CONCLUSION

Upon review of this matter and for all the reasons explained above, there is substantial evidence in favor of the ALJ's decision. Accordingly, the ALJ's decision is due to be **AFFIRMED**.

21

**DONE** and **ORDERED** this the 1st day of July, 2009.


**VIRGINIA EMERSON HOPKINS**
United States District Judge